The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. You may be seated. I want to welcome everyone to the Fourth Circuit Court of Appeals this morning. We have three interesting cases, very good lawyers, and we want to make a special welcome to the students from James Madison University who are here to observe. And with that, our first case is Darius Vitkus v. Antony Blinken, number 226901, and that's Ms. Sophia. Yes, Judge, good morning. Good to have you with us. May it please the Court. Good morning. My name is Feru Sophia, and I'm here this morning on behalf of Mr. Vitkus, the appellant in this case. We're here today asking that the Court reverse the lower court's decision denying a preliminary injunction in the form of a stay of extradition in this case. In fact, we would be asking that the Court enter that stay of extradition for the pendency of the habeas proceedings. We do believe that the Court's ruling here in this matter will be instructive to the District Court in the habeas proceedings, which remain pending in substantially the exact same procedural posture that they were when this appeal was taken. Now, today we are asking that the Court find that the District Court abused its discretion in failing to enter the preliminary injunction and will review the factual issues for clear error and the law de novo. Now, in the request for the preliminary injunction, Mr. Vitkus was required to show four specific requirements. The District Court, in finding that Mr. Vitkus failed on the first requirement, to show a substantial likelihood of success on the merits, did not consider the other three, aside from a footnote advising that there was a probable likelihood that Mr. Vitkus would suffer irreparable harm if he was extradited, and that was to allow for the stay pending the appeal in this case. Now, specifically, we believe that Mr. Vitkus did, in fact, show a substantial likelihood of success on the merits for two reasons. First and foremost... Can I ask you to move that mic a little closer to you? Yes, Judge, I'm sorry. Is that better? Yes. First and foremost, in this case, the specific language of the treaty requires that Mr. Vitkus be charged with a crime and that a charging document be presented as part of the documentary requirements of Article 8. The charging document issue is the controlling issue here, is that correct? Yes, Judge. Yes, a failure to comply with the documentary requirements. That's the whole thing. Yes, Judge. Whether they have presented a charging document. Yes, Judge, and whether or not he's formally charged with a crime, which in this case does matter, different from other extradition cases that have been decided, and the reason it matters is because of the... The United States and Lithuania, the parties to the treaty, say they have presented a charging document. Well, Judge, they... The Secretary of State says that Lithuania agrees with them. Their position is that they have presented a document that would be equivalent to a charging document or that could satisfy the requirement. That's what they say, but the treaty says simply, charging document. Well, Judge, I would say... In the singular, charging document. It says the charging document. The charging document. Which I think... Which I think... There you go. I apologize. I think when you look at the rules of construction of statute and treaties, which although the court is required to provide some deference to the party's interpretation of the treaty, the case law is very clear that that deference is when it's based on the plain language of the treaty and that the plain language is consistent with what the parties are asking the court to find. In this case, the government in Lithuania's position that any document can suffice as long as it presents what the charges would be is not consistent with the plain language of the reading of the treaty. Specifically, even in the letter that the prosecutor, the chief prosecutor from Lithuania provided, which is included in the record, it specifically says that the evidence necessary to or the amount of evidence necessary to present these documents is different and less than what would be required at a future stage to present charges. That might be a question better addressed to your colleague on the other side, and maybe I'll get her take on it when that time comes. But I'll ask it to see if you know the answer. It just strikes me as odd. I mean, is there something about Lithuanian procedure that somehow bars the issuance of an indictment while your client is still here in the United States? Because it seems to me like the easy answer is indict him and then game over, right? I would agree with your position, Judge. And I think that if you look at some of the case law, which talks about – I think the case law is instructive here but not right on point. But there's case law that says, well, if a charging document is not required, then the parties of the treaty can show, well, it's not specifically required, but you can interpret charge to mean an intent to prosecute. Now, that's a case out of the second – Judge Diaz, I understood his question was, are they barred in Lithuania from charging him while he is in the United States? Judge, they are not. They are not? They are not. Now, that's a question of Lithuanian law. And that law is included in the record. So we had provided with the original extradition court the subsections from Lithuanian law that discuss – it's at page 225 of the joint appendix. It explains the procedure because what has to happen is, at first they have to serve the notice of suspicion on the person or the decision, and then they can issue the indictment. Now, it gives specific instructions of how they do that when the person is overseas. And that's at Article 218 of the Lithuanian Penal Code,  so that they can then request an indictment. There has never been any allegation or – aside from a statement by the government not supported by any facts or any evidence or any record – any document in the record that says that they haven't been able to proceed because he's here. But really what it is is it shows a lack of intent to prosecute on the part of Lithuania. Now, although the complaint for extradition was filed in 2020 – Isn't the fact that they've requested his extradition some evidence of intent to prosecute? It's an – well, it's an intent that they intend to prosecute or that they would like to maybe – not prosecute, but investigate, because in this case we don't even have a situation where charges have been filed. He is in the first preliminary stage of the pretrial investigation. Lithuania first explored this possibility in 2012 by sending a communique to the Department of State, which is contained in the record, and then didn't do anything for several years. Mr. Vitkus was in the custody of the United States Immigration Customs Enforcement for nearly two years. Lithuania didn't do anything. After he was granted withholding of removal based on his – what is the equivalent of torture by the same people who are mentioned in these notices of suspicion, the same investigators, then released from ICE custody. Six years later, Lithuania finally decides to proceed with the formal – through the U.S. government with the formal complaint of extradition. And then we're dealing with, from November of 2020, when that extradition complaint was filed in the Southern District of Florida, we're now dealing with nearly two and a half years that this whole issue, if they really intended, they could have just submitted an indictment, sent the documentation, and this would have been – this would have been a moot issue. But, Counsel, I understand the argument that the treaty says charging documents, and these are documents that generally refer to suspicion of a crime. The challenge, it seems to me, is that charging document isn't defined in the treaty. We certainly have an understanding of what we think about in the United States, but the case law talks about that that's not really our inquiry. And we really have layers of layers of deference. We construe in favor of extradition. We construe – we give deference to the government. We give more additional deference if the two parties agree. You were in a habeas court. We have deference there. I mean, it's about as many – and then on top of that, we've got abusive discretion for the standard here. So I don't know how many more layers of deference you can get. And I will say in one of the documents, it's at JA 87, it leaves with, you know, the material confirms that Darius Vitkus has committed criminal offenses. Now, it goes on to talk about being suspected too, but it says committed. And I'm just – you know, I'd like to answer this. With that language and with the affidavit from Mr. Heineman, how is there not at least enough record in the evidence that given the deference that we're required to follow, that we in fact do that? I don't believe that there is enough evidence in the record. While the court is required to give deference, the deference is when it's consistent with the language, the plain reading of the language. And I think if you look at Aguas Vivas, which I know is not a controlling case but a Second Circuit case, they specifically outline in that case when you're – and it doesn't even say the charging document. In that case, it says a document stating the charges. But in that case, the court held anyone who's familiar with criminal procedure understands that that – when you refer to a document like that, you're requesting a formal charging document. And then they specifically go on to say in that case that we're dealing with a legal system that both the United States and the Dominican Republic in that case that have specific formal charging documents in place. So it's not a guess as to what would be the formal charging document. Under U.S. law, the charging document would be an indictment, a complaint, an information. Anything else? In some – I mean, I practice criminal law in Florida. In some situations, it can be a citation. But it's some type of formal document that is for that purpose. And in the record – And what is a charging document under Lithuanian law? It's an indictment. And we presented testimony to the extradition court. Is there anything other than an indictment? So in the extradition court, we had testimony from a Lithuanian expert on criminal law. And he specifically talked about how in Lithuania, criminal charges are started with an indictment. And he said the only exception in Lithuanian law that can allow for criminal charges not to happen with an indictment is a very limited exception for minor offenses that you cannot face any incarceration for. And it has to be resolved, I believe, within 10 or 14 days of the commission of whatever this minor incident is. We know for sure that can't be an offense that qualifies here. And what they have here is called a notice of suspicion. Yes, prepared by an investigator. And something else. What's the other – A decision. And so these are documents. And in the Lithuanian Penal Code, which we included, it's in the appendix, it's specific. And also our expert talked about it. There are clear differences between those documents. Your expert apparently wasn't credited. How do we – what do we do with that? Well, the – The judge ruled against you. Well, the judge didn't rule against him that there was – that he just found that there was – what he was saying was inaccurate. What the judge said is that as he understood the treaty, the treaty didn't require a specific charging document. But if you look at the language, the specific clear language, the statutory interpretation, it's the charging document. And that is what makes this treaty different from all the other treaties that are out there. Many of the treaties say something like a charging document, if any, making it optional. Or a document outlining the charges. Or some type of information stating what the person would be charged with. But that's not the case here. They negotiated these specific three words. Yes, Judge – This specific – Yes, Judge, they did. And it's important to note that this happened after the decisions in Imami, the decisions in Asar San, which specifically stated in all of those decisions that had the court intended to require a charging document – excuse me, had the parties intended to require a charging document, they would have stated it. So even knowing that those cases came out, they chose the specific language in this case to choose the charging document. And if you look at Article 8, Section 2, it specifically says, as part of the requirements of the treaty, the parties shall provide any of the documents requested in 3 or 4. It doesn't say those documents or any other similar documents. It says you shall provide those documents. And the charging document is not an option in this case. It's specific. They've got somebody here that says that the things they have filed, this notice of suspicion and something else, are the charging document. Well, Judge, they – Their brief says that, I think. What their language is, is that it is a document like a charging document. They don't say that it's the charging document. They say it would satisfy the treaty requirement. But at no point do they say that it's like an indictment. And, in fact, the Lithuanian Penal Code, which is included in the appendix, specifically says – You're saying being like the charging document doesn't do it. It's got to be the charging document. Not in this case. And you can look at both Agus Vivas and the case of Caesar Bay v. Guccione, which is a Second Circuit case which was cited by the government. It's not just they that say that. The Secretary of State says that. And the Secretary of State says that this country indicts in similar circumstances, even with charging documents language. And that may be – maybe that's wrong, too. That doesn't mean, you know, you lose, I think. But that is the way both our government and the Lithuanian government say that we should construe that language in the agreement. And, yeah, and while I certainly understand that it's different from, you know, what we might consider the charging document in a criminal sense, I get that argument. You know, since the term's not defined, why don't we have to defer to the understanding of the two parties to the treaty? Because it's not compliant with the plain language of the requirements of the treaty. Even though the charging document doesn't say, for example, it has to be called XYZ, because obviously Lithuania is a small country. They only have one type. In the United States, as was discussed, there are several different types of charging documents. But in this case, it's specifically requiring the charging document, and anything else is contrary to the plain language of the treaty. And, again, although the parties are now saying that that's what was intended, we have the Senate committee notes regarding the negotiation of the treaty. And it was happening at the same time as the treaty in Peru, which has similar language. In the treaty in Peru, they make a point to outline, it doesn't have to be any specific charging document. It doesn't even have to be a charging document as called a charging document. It just has to be something in support of a warrant. There is no distinction or no clarification in this treaty that says there is no required, it could be something like a charging document, or as long as everybody agrees that it's close enough to a charging document. The thing is, what we. . . Why don't you let us hear from the secretary. You save some time. Okay. Thank you. Ms. Hachisky. I'm sorry if I messed up that name. No worries. Good to have you here. Thank you, Your Honor. Good morning, and may it please the Court. Rebecca Hachisky for the United States. Your Honors, the district court acted well within its discretion when it denied the motion filed by Petitioner Darius Vitkis requesting a preliminary injunction. The abuse of discretion standard that applies in this appeal is a high one, and Mr. Vitkis falls well short of it. The Supreme Court has made clear that the issuance of a preliminary injunction is an extraordinary and a drastic remedy, and that's particularly true in this case where Mr. Vitkis seeks to prohibit his extradition to Lithuania even after a magistrate judge in Florida certified that he may be so extradited. A district court in Florida rejected his legal challenges to that certification. The Secretary of State then determined that he could and should be extradited to Lithuania. And finally, the lower court in this case similarly determined that he has no likelihood of demonstrating that he may not be extradited to Lithuania. We don't give any deference to the courts in Florida, though, do we? No, Your Honor. And the district court here, the deference that we would accord there is because it's an injunction proceeding. That's correct, Your Honor. However, the decision of the lower court in this case is in perfect accordance with the decision. But if there's an error of law being committed by the district court, that's an abuse of discretion. That's right, Your Honor. It does away with his deference. Right. What we've got left is Judge Quattlebaum is asking your colleague here. The Secretary of State says that both countries agree that this language apparently doesn't mean what it says. So, Your Honor is right. Although it was negotiated by the United States of America and the Republic of Lithuania, it doesn't mean what it says. I think the parties take the view that it does. And if we agree with that, you win. You prevail. Go ahead. I'm sorry. I didn't mean to interrupt you. No, no. I'm sorry. I think if the court does afford the deference that's due to the views of both parties in this case, then the government would prevail. But it's not blind deference. I mean, we need to look at the language of the treaty. And Judge King's point is on its face. If we were looking at this in isolation, the definite article would suggest that you need something separate from the items that precede it. So what is it about this treaty and this plain language that makes it different other than the ipsa dixit of the people who signed onto it, which is not completely irrelevant. But, I mean, we need to look at the language of the treaty. Absolutely, Your Honor. And certainly the parties' view needs to be reasonable. But the Supreme Court in Sumitomo said that only extraordinarily strong contrary evidence is a basis to reject the parties' claim. But we've got the Constitution that says the law of the United States consists of the Constitution, the statutes, and the treaties. So this treaty is the law of the land. So the words, the charging document, is part of the law of the land. It would be the law of the United States. Not the law of Lithuania. It would be the law of the United States under our Constitution. Right? Yes, I would certainly agree, Your Honor. And I don't think the use of the definite article is particularly meaningful. And I think the best interpretation of... it can't mean anything else. I mean, it's plain language. So I think that the best interpretation of this language was provided by the extradition court in the Manrique case, which looked at this definite versus indefinite article issue. And there the court found that the only reason that the parties had used the word the was simply to refer to the relevant charging document in the particular case. And it did not ascribe further importance to the fact that it wasn't a document, a charging document. However, the plain language of the treaty clearly doesn't require an indictment. Mr. Bickus' expert concedes that the language is not indictment. It's merely a charging document. And as Your Honors have been referring to, in the United States anyone would understand the term charging document to include a number of different documents. And extradition is... What in Lithuania would be a... I mean, is it the Secretary of State's position that what was provided here is a charging document in Lithuania? And what's the basis of it? I mean, Judge Dias makes the point that we do have the parties saying it satisfies it. But from an analytical standpoint, can you give us an explanation how something that says someone is a suspect is a charging document? So the parties were interpreting the term charging document as it is used in the extradition treaty. And that's with the overlay that, as the Supreme Court has said, in the case of Factor V Laubenheimer, that we interpret terms in an extradition treaty liberally. And to the extent there's any ambiguity, the court is bound to construe those terms liberally in favor of granting extradition. Well, you have to say that the term, the term, the three words, the charging document is ambiguous. No, Your Honor, the government takes... If it's ambiguous, then you've got to try to figure it out. But are you saying it's ambiguous? No, the government... It's not ambiguous. It doesn't seem to me it's ambiguous. I mean, I'm not as educated as a lot of these folks, but I always thought I understood what those three words mean. They take together what they mean. And somebody represented in Lithuania, it means an indictment. They have an indictment like we have an indictment, I guess. Is that what they call it, an indictment over there? That's what Mr. Vickas' expert has... Do you disagree with that? No, Your Honor. Okay. Can they get an indictment now, even though he's not in the country now? They have to have him back there to indict him? No, Your Honor, and we would disagree... So they could indict him right now. They could indict him while this case was going on. No, the government does not agree with that argument. Pardon? The government does not agree that he could be indicted right now. And, indeed, as Your Honor has pointed out... He can't be indicted now. Why is that? Correct. So as the record indicates, there are certain procedural steps that need to happen before an indictment may issue. And evidence provided by Mr. Vickas' own expert indicates, for example, that they must obtain the position of the suspect with respect to the suspicion that's been lodged against him before an indictment may issue. So because these... The fact that he's here and refuses to go back to Lithuania pretty clearly clarifies his position. Precisely. He doesn't want to be indicted. Precisely. All right. So what else do you need? What else do you need? What else do you need? I mean, back to Judge Quattlebaum's question, can he be indicted right now? No. So certainly there is nothing in the record that says, as my opposing counsel said, that an indictment may issue at this point in the process. And what's in the record indicates that there are these procedural steps, like having to obtain the position of the suspect on the indictment. I'm sorry. What does that mean, the position of the suspect? I think whether he's agreeing or... I just told you he's here because he doesn't agree that he doesn't want to be indicted. So what, are you going to drag him over there and say, I don't want to be indicted? Precisely. He's supposed to be extradited so that he may answer to the charges of Lithuania. Let me ask you this. Part of the evidence in this case is the letter from the Lithuanian expert. Are you relying on that in support of the interpretation of the treaty, the prosecutor? You mean the letter from Mr. Vickis that Mr. Vickis provided or the letter from the Lithuanian government? Well, let's see. The chief prosecutor, whose evidence is that? Is that their evidence or your evidence? The government offered a letter from the Lithuanian prosecutor indicating that the documents that the Lithuanian government provided in support of its extradition request satisfied the treaty requirement. That's the letter that I'm referring to. So, you know, as I read that letter, it seemed to pretty logically describe the process. And as you read it, it seems to be almost entirely focused on the investigatory stage of the proceedings. And it describes, I have no reason to dispute it, that this is how Lithuania investigates someone who's suspected of a crime. And it goes through the process. And at the bottom of JA 219, it says that when the pretrial investigation is being carried on and new data relevant to the investigation is being collected, the situation is constantly evolving or changing. And in some cases, the suspect's criminal offense may need to be supplemented or even reclassified. And in such cases, a new notice of suspicion shall be served on the suspect. And then sort of the money quote says the notification of suspicion to recognize a person as a suspect would be the equivalent of a charging document. But I don't see how that conclusion flows from what the prosecutor just described, which seems to me just part of the investigatory process. How do you get from that to this conclusion? It just seems like it is so because I said it. Well, what the prosecutor describes at the top of that page is that criminal prosecutions in Lithuania have four stages, and the first stage of that is called pretrial investigation. And that's the stage at which Mr. Vickas' case is at the moment. And the documents that Lithuania has provided do resemble what we would consider to be charging documents in that they identify specific provisions of the Lithuanian criminal code that Mr. Vickas is alleged to have violated. I don't mean to cut you off, but they resemble some of the factual elements, some of the statutes, but they don't charge. Our charging documents charge. These don't. It seems like we're all struggling with how we can—and the treaty says the charging documents. When something doesn't charge, we're being asked to say the party's statement that it satisfies charging. We should defer to—I thought you were going to get to earlier something about the process that, look, there are steps that must be followed in Lithuania, and before you can actually indict, a potential defendant must give its position. And if that's the case, it almost suggests you can't indict until the extradition takes place. I mean, if that's the position of the government, please say so. That might be something we can consider. I don't think I have seen that really in the positions articulated in the brief or anything. But if that's now the position, that would be relevant. Otherwise, it seems like we're just looking, okay, the parties say it, and we're supposed to believe it, even though it seems to be different than what the plain language says. So the government does take the position that Lithuania cannot indict Mr. Vickas at the moment. We reference this in footnote 12 of our brief on page 31. However, in preparing for argument, I reviewed the documents again that Lithuania provided and noticed the fact that we did need to obtain the position of Mr. Vickas, and that's referenced on page J229. And I also—it's not in the record, but I did go back to the government of Lithuania and asked them whether they were able to indict him at this time, and the government informed that they are not. So further confirming what I think bears out from the record, the documents indicating that there are certain steps. And I— If that's the case—and I asked the question, didn't interrupt you. That's not a good way to do things. But just since we have limited time, I mean, why wouldn't you, if given these types of issues, have broader language? I mean, it'd be so easy, I would think, sounds like this is a, you know, from Mr. Heinemann's affidavit that this is a kind of thing happens. I mean, why would you have language that, you know, at least could be read to be narrow when it's apparently viewed so broadly? So I don't think that was the intention of the parties. And perhaps an overlay that would be helpful for the court is that typically in extradition proceedings, the courts do not get into the nitty-gritty of foreign procedural law. This comes from the Supreme Court in Grinby, Cheyne, as well as the Amami and the Osiris in cases, saying that we're not going to look too deep into what happens in the foreign criminal process because the whole point of extradition is simply to allow that process to go forward. So we're going to give comedy to our treaty partners in the— I get that, but you still in the treaty put the charging document. When you could have said the charging document or if one cannot be obtained documents that reflect, you know, substantially the information in the charging document, it would have been very easy. You know, y'all are smart people, and I mean, that would be a pretty easy thing to do, and yet you didn't. Are we just supposed to ignore the fact that you didn't do that? No, I just don't think that the record bears out that the parties intended for it to be a rigid requirement. You know, they didn't include the term indictment in the treaty, and when they added this charging document requirement to the treaty, the technical analysis does not note that it was a key provision, and that's important because the old version of the treaty did not include this charging document requirement, but it did still include the charged with language. And so the addition of the charging document was not intended to narrow the scope of the treaty and to narrow what it means to be charged with a crime. It was simply adding a documentary requirement to the treaty. And the function of a charging document is to ensure that the parties are clear on what charges a fugitive may be extradited on. And that's important because in extradition, when someone is returned to the foreign country that sought extradition, they are bound by what's known as the rule of specialty to proceed only on the charges for which surrender was granted. So the charging document requirement helps the parties to be clear on what charges the person may be prosecuted on if he's returned. So you're saying that Lithuania would be bound by the charging document as it now exists and couldn't add to it if Mr. Vickis was returned? They would be bound by the Secretary of State's surrender decision, which was in this case to grant extradition on all the charges for which extradition was requested, and those are the charges that are laid out in the notices and the decisions provided by Lithuania. But they're not charges under – we normally understand them. There's no indictment in Lithuania. No, Your Honor, there's no indictment, but they are charges in that those are – But this thing about whether – I was a prosecutor for a long time. I probably signed thousands of indictments, and we never did have to know where the defendant was. Most of the time we did probably. But when we returned an indictment, if we didn't know where they were, we'd just issue a warrant, and they'd go look for them. They could be somewhere in some other state, another country, or anywhere, and we'd look for them. But you get the indictment first, and that would be the basis to proceed. But you all say that on this footnote 12 on page 31, it seems to say no indictment could yet have been issued pursuant to Lithuanian law, but there's no citation, for example. I would point the court to J229. We're in J – I see – I'm at J229 now. Can you – and I'm – can you point to the specific language on J229 you're talking about? Yes, it's – so J229 contains Article 219, and it's subsection 7 of that provision that says that the indictment must contain the position of the suspect if the suspect does not agree with the suspicion. And this is similarly borne out in Article 218, which appears on J224 in subsection 2, which also says that the suspect and his lawyer shall also be informed that the suspect may, before the indictment is drawn up, declare in writing that he agrees with the suspicion. Why does that require an extradition to get the suspect's position? The reason that Mr. Vickas is in the United States is because he's evading prosecution in Lithuania, so they're unable to obtain his position while he's here. But if he were returned pursuant to extradition, then he would be available to provide his – What does that mean, the position of the suspect? I mean, does he have to submit something in writing, or how does that operate, if you know? I don't know, Your Honor. I'm sorry. I'm not an expert on Lithuanian law. Because he could probably ask his lawyer right now for his position, and you'd have the answer, right? Right, but my understanding is that's not how the process works in Lithuania, and the point is that he must return to face the charges in Lithuania if he intends to contest them. He shouldn't be able to contest them from abroad. The questions of Lithuanian law that are at play right now are ones that he may resolve once he returns to Lithuania. And if I can address my opposing counsel's point about the fact that in Imami and Asarisin, the courts in those cases referred to the fact that the treaties at issue there did not contain a requirement of formal charges. And I would argue that that language is not material to the decision here. As an initial matter, the courts in those cases expressly used the term formal, and the parties likewise could have used that term in the treaty if they had wanted to narrow the scope of what a charging document could be provided. They could have said formal charging document, and they did not. You think formal would change it? I do, Your Honor. You think the word formal would change it? I do, Your Honor. Why would that change it? A charging document. I think in the… If you look at it under American law, it's indictment. It's an information. A prosecutor can sign information under American law. It's a complaint issued by a judge or a magistrate judge. She mentioned a citation. I wouldn't want to go that far, but that's what a charging document is. And she says in Lithuania, it's even narrower than that. It requires an indictment. Ryan, I think that gets to the heart of the problem. You say you can't indict somebody unless they're there. So it means you can't indict somebody unless they've got custody of them or know where they are, which is nonsensical almost. That's precisely the point I was going to make is that the parties wouldn't have entered into a treaty that would essentially endow a fugitive with impunity if all he had to do was flee during the pretrial investigation simply because they could not issue an indictment due to his flight. But the fact that the treaty does not use the term formal charges is not indicative of the fact that the parties were trying to change the meaning of charged in the treaty. And there's no reason to think that the term charged in a treaty that does include a charging document requirement means something different than it actually does. Can I ask another question about the Lithuanian prosecutor's letter? The letter says that bringing charges occurs later and requires a higher quantum of suspicion. So doesn't that suggest that the notice of suspicion by itself really isn't a charging document or its equivalent if you need a higher level of suspicion to actually bring an indictment? I think what the prosecutor does say in that letter is that you need evidence that would allow reasonably believing that a particular person has committed a criminal offense in order to identify them as a suspect. So even just to issue a notice of suspicion or a decision recognizing someone as a suspect, you need this reasonable belief that the person committed the crime, which is not too far afield from our own probable cause requirement. There may be a higher standard. That's the standard. I go back to why wouldn't you say it in the treaty? That'd be easy language to put in, wouldn't it? Certainly, Your Honor, and that's not how the parties proceeded. When you become Secretary of State 10, 15 years from now, you fix this problem for us. No, but I do think that, as I said, the parties could have been more specific in their language. Some treaties do specifically identify an indictment or a different kind of charging document, and that's not what we have in this treaty. As the Court said in Grunby Shine, even when a foreign country provides a document that doesn't bear the label, the same label that we would assign to it. So in that case, it was an arrest warrant that was called an arrest warrant, and the Court said, well, this looks to be pretty much the equivalent of how a U.S. warrant would function, and it's clearly designed to obtain the detention and production of the person before a judge. So we're not going to dig further into the criminal procedure in Russia in that case. We're just going to accept the fact that this would satisfy the treaty requirement, particularly when construed broadly pursuant to the Court's principles of construction of extradition treaties set forth in Factor. I'm happy to address the other claim that Mr. Vickas has raised with respect to his immigration relief. Otherwise, I'll sit down.  Thank you, Your Honor. We appreciate you. Ms. Sofia? Yes, Judge. First of all, as to the questioning regarding whether or not Mr. Vickas is able to be indicted, there is no evidence to support the government's position that he's unable to be indicted. In fact, the prosecutor's letter talks about how they're still in the pretrial investigation stage. At no point does it say, we cannot indict him because he's not here. Furthermore, the Lithuanian Penal Code provides procedures if the government is saying, well, we can't get his position, we need to serve the notice of suspicion on him. It provides the procedures for doing that for someone who is overseas, which is Article 218 of the Lithuanian Penal Code. It's provided at page 225 of the appendix, which it provides the procedures for forwarding it to, which would most likely have been the Department of State, for them to serve it. And then, as to the question that relates to, well, what about the position of the person, first and foremost, Mr. Vickas is represented in Lithuania by an attorney. And we have, as part of the record, on page 291 and also page 460 of the record, the attorney doing a written inquiry asking, what is the status of this investigation? This is a response from the prosecutor saying, we've received this response from Mr. Vickas' attorney, and we are notifying you no indictment has been filed, because the language is a pretrial investigation, the procedural decision has not yet been adopted. At no point in any of these letters does it say, we aren't able to indict Mr. Vickas because Mr. Vickas is on the run, or he's a fugitive. What it's saying is, we haven't finished, nearly 15 years later, our pretrial investigation, and so we haven't made a decision as to whether or not we're going to indict. Now, and it doesn't say that Mr. Vickas has to give that position himself. He has his defense attorney representing him on those cases in Lithuania, and it's clear from the record. Now, the government, in its argument, made a statement that said, well, the treaty changed, and the language of the treaty changed to add the charging document, but that doesn't change anything. But when we talk about deference to the government's position, the case law says that, yes, the government is entitled to deference, unless there's no consistency in how they're applying their standard or their interpretation. And if you look specifically at the case of Sesebe V. Guccione, it's an extradition to Bosnia from the Second Circuit, the government in that case argued, and the court found merit, specifically, when extradition treaties state that an individual must be charged with a crime in order to be extradited, but do not require the filing of an accusatory instrument, a state seeking extradition needs show only an intent to prosecute the individual in order to satisfy the requirement he be charged. So then the government said, well, since we didn't require a formal charging document, the word charge just means an intent to be charged. And then the court said, yes, that makes sense, and that if they did intend for him to be charged formally, then it would then take on that meaning. So when the government says here today, well, before we didn't have that requirement, and then we changed the treaty and we thought that it just meant to be charged in general under prosecution or under investigation, but then we changed the treaty, we added that specific requirement of the charging document, but we're asking you to find that there's no relevance to us actually adding that, and you should still adopt the same position that we took before when we didn't require that document, be part of the mandatory documents, and just meaning that you could just produce any document showing the charges. And then the government relies on sumitomo in saying that, well, you have to give deference to the interpretation of the party unless there's evidence to the contrary. In sumitomo, this is a situation where the government and Japan, who was the party to the treaty, both interpreted the treaty exactly how the plain language of the statute was read, and that the opposing party was trying to extrapolate a different type of meaning from the treaty to satisfy their requirements or what they were trying to achieve. That's not the situation we have here. Here, the government and Lithuania's interpretations of the treaty are not consistent with the plain language, and they're asking us to disregard the plain language of the treaty and instead extrapolate this other meaning that is inconsistent with all the other treaties that they've negotiated and all the other case law that specifically says, hey... Well, we're supposed to give them a lot of deference. We're supposed... We're supposed to give deference in these cases. We're supposed to give deference when... So, first of all, the government conceded in their argument that the meaning of this treaty, the meaning of this specific language is not ambiguous. So when there's ambiguity as to the meaning of the treaty, then we're supposed to defer to the government and the party's interpretation. But in this case, it's not ambiguous. And they said it. It's not ambiguous. The charging document means the charging document. And in that case, especially if you look at Aguas Vivas, which was the First Circuit case, they ended up declining to certify extradition on other grounds, saying that because the government was trying to use one document to satisfy two prongs. But they specifically... They laid out six reasons why the charging document... The document presented in that case, which was not an indictment required by Dominican law, was not sufficient. They said the plain language, first and foremost, is not consistent and would render the language irrelevant if we didn't look at the plain language of the treaty. They're asking everyone to say, hey, just ignore this part of the treaty. It doesn't really mean anything. Counsel, your time is about to run out, and I just have a question that I want to make sure I understand. Your reference to JA 225, and I have that in front of me. Are you referring to paragraph 9 on that page? Yes, sir. Okay. Do you have that in front of you? Yes. Okay. Okay. What that's saying, it's talking about sending... If the suspect is not in the territory of Lithuania, the prosecutor can send a notice of the pretrial investigation for a crime. It's not talking about... Just give me your interpretation of how that helps you in this case. Well, I understand that to be the notice of suspicion, which is the pretrial investigation, which is the document that they're saying here is the charging document, that it allows for a procedure in place. If the government's position is, well, it can't be served on him to get his position, therefore he can't be indicted, this is saying, yes, there is a procedure to notify someone who is outside of the country that this is happening. Well, it's saying there's a procedure for sending notice of the pretrial investigation, which has happened. I'm not making the connection to the argument that they can't indict without a position. I get your argument that the letters you referred to don't raise that as a hurdle. I understand that position. I'm not understanding how this relates to that argument. So the government's argument was that because he hasn't been provided formally with the notice of suspicion to get his opinion or his response... Yes. ...is because they haven't, he hasn't given his position to the notice. They didn't say, I think my understanding was their reading of the Lithuanian law was to indict, you must have the defendant's position, and not that they couldn't provide him with the notice of suspicion. Maybe I'm... As I understood it, Judge, is that they can't get his position because he can't be served with it. And because he's not served with it, they can't formally obtain his position. Thank you. I appreciate that. All right. If there are no further questions, I'll go. Thank you very much. Thank you. We appreciate the arguments of counsel.
judges: Robert B. King, Albert Diaz, A. Marvin Quattlebaum Jr.